# Womack *v.* Bird.

*Trespass for Wrongful Taking of Personal Property.*

1. *Plea of not guilty; what evidence admissible under.*—On the former appeal in this case (51 Ala. 504), it was rightly ruled, that in an action of trespass *de bonis asportatis*, under the plea of not guilty, the defendant can not be allowed to prove, in mitigation of damages, or for any other purpose, that the act complained of was done under legal process.

2. *Justification under legal process; what constitutes.*—When the defendant, in such action, pleads justification under mesne process (as the levy of an attachment), after the return day of the writ, he must aver and show the due return of the process, or a sufficient excuse for the failure to return it.

3. *Same; what will excuse failure to return process.*—A compromise of the attachment suit between the parties thereto, made after the levy, by which a portion of the property seized was delivered to the plaintiff therein, and the residue restored to the defendant, or left for him where it then was, nothing being said as to the disposition of the suit, is not a sufficient excuse for the failure to return the attachment.

4 *Compromise of attachment suit; how available in defense of trespass for levy.*—Such compromise of the attachment suit, and its performance, are not a bar to the action of trespass on account of the levy; though the partial restitution of the property, under the compromise, is good matter in mitigation of damages, under the plea of not guilty.

5. *Agency; how proved.*—Agency can not be proved by the mere declarations of the person assuming to act as agent, though it may be inferred from his previous employment in similar acts, or from subsequent acquiescence.

APPEAL from the Circuit Court of Greene.

Tried before the Hon. LUTHER R. SMITH.

This action was brought by Mrs. Ann M. Womack, against William P. Bird, to recover damages for the wrongful taking of "twelve bales of lint cotton, averaging 500 lbs. per bale, five hundred bushels of corn, two hundred and fifty bushels of cotton-seed, and twenty-two thousand pounds of unginned cotton, or cotton in the seed;" and was commenced on the 1st April, 1869. The defendant pleaded not guilty, and issue was joined on that plea; and the defendant had a verdict and judgment, which was reversed by this court on appeal, at its June term, 1874, and the cause remanded, as shown by the report of the case in 51 Ala. 504. After the remandment of the cause, the defendant filed two special pleas, as follows :

"2. That on or about the 17th December, 1867, a certain writ of attachment was issued by D. B. Butler, clerk of the Circuit Court of Greene county, Alabama, which was in words and figures as follows;" setting out an attachment in favor of Bell & Moore, against Ann M. Womack and Lowndes Wo-

[Womack v. Bird.]

mack, dated said 17th December, 1867, returnable to the next term of the Circuit Court, and directed to "any sheriff of the State." "That on said 17th December, 1867, there being no sheriff or coroner in and for said county, this defendant was appointed by Hon. W. C. Oliver, judge of the Probate Court of said county, special coroner to levy said attachment, by an order indorsed on said writ, in words and figures following : 'There being no sheriff, Wm. P. Bird is hereby deputized to act as special coroner in this case, the plaintiff waiving that he should give bond, December 17, 1867,' " signed " *W. C. Oliver*, judge P. C. G. C." "That said attachment, with said indorsement thereon, was placed in the hands of this defendant, who is the Wm. P. Bird named in said appointment and indorsement ; and afterwards, to-wit, on the 19th December, 1867, under and by virtue of authority of the said writ, and said appointment as special coroner, this defendant, acting in the discharge of the duties of sheriff, levied said writ on a lot of corn and cotton, as the property of the defendants in said writ, which levy was indorsed on said writ, as follows," setting it out. "That the plaintiff in this suit was one of the defendants in said attachment suit ; that said attachment was not levied on any other property whatsoever, except as set forth in said levy and return ; that said levy, as indorsed on said attachment, was made by this defendant, as such special coroner, in the discharge of his duty as an officer of the law, under said writ and appointment, and in no other way or capacity ; that said writ, with said levy indorsed, was by this defendant duly returned to said Circuit Court, according to the mandate of said writ ; and that said levy of said attachment by this defendant, as special coroner as aforesaid, and no other act or thing whatever, constitutes the said supposed trespass," &c.

"3. That all of the alleged trespasses, charged against this defendant in the plaintiff's complaint, consisted in the levy by this defendant, acting as special coroner, of a writ of attachment on certain cotton and corn of the plaintiff in this suit, who was a defendant in said attachment suit ; that said attachment suit was compromised and settled, by and between Bell & Moore, the plaintiffs in said attachment, and said Ann M. Womack, one of the defendants therein ; by which compromise and settlement, the cotton levied on was agreed to be, and was, turned over to the said Bell & Moore, to be by them sold, and applied towards the payment of the debt of said Ann M. Womack to said Bell & Moore, sued for in said attachment suit ; which was accordingly done, and the said Ann M. Womack duly credited by said Bell & Moore with the net proceeds of said cotton ; and that by said com-

promise and settlement, the levy on the corn was to be released, and said corn left where it was when said levy was made; and said levy on said corn was released accordingly, and the corn left where it was when levied on under said attachment."

The plaintiff demurred to each of these special pleas; assigning several grounds of demurrer to the second, which, in substance, alleged that the order of the probate judge, appointing the defendant special coroner, was void, and gave him no authority to levy the attachment; and to the third the following were specially assigned as causes of demurrer :. 1. "Because it does not allege that said writ was returned according to its mandate, or that it was returned to court." 2. "Because it does not allege that said writ was returned according to its mandate, nor that said defendant was a party to said compromise, nor that said compromise was before the beginning of this suit." 3. "The taking of said corn and cotton by virtue of said attachment, as alleged, without alleging its return, and said alleged compromise thereafter, are not sufficient to justify said trespass; and if available at all to the defendant, could only go in mitigation of damages, under the general issue." 4. "It is no justification of said trespass, that said plaintiff made said compromise with Bell & Moore as alleged, when said plea shows that said defendant took said corn and cotton by virtue of a certain writ of attachment, acting as special coroner; and said plea does not allege that said writ was returned according to its mandate, nor show by what authority said defendant was acting as special coroner, nor by whom appointed, nor for what county." 5. "Said plea is double, justifying under said writ, and then under said compromise." The court overruled the demurrers, and issue was then joined on these special pleas.

On the trial, as the bill of exceptions shows, when the defendant offered in evidence the said writ of attachment, the plaintiff objected to its admission, because, as shown by an indorsement on it, it was not returned until the `26th April, 1869, which was after the commencement of this suit; but the court overruled the objection, and admitted it; to which the plaintiff excepted. It appeared that, after the seizure of the cotton and corn by the defendant, under the attachment, after the tenants on the lands had been allowed to remove the part claimed by them, the residue of the cotton was forwarded by the defendant to said Bell & Moore, and the corn was left on the place, where it seems to have been wasted, and carried away partly by unknown persons. The corn was thus left on the place, and the cotton sent to Bell & Moore, under some arrangement between said Bell & Moore

and one John V. Wright, who was the son-in-law of the plaintiff, and assumed to act for her in the matter, but without any authority from her, as he testified; and he stated that he proposed the arrangement on his own responsibility, and without consulting the plaintiff about it, because he wanted to obtain the corn for his own use, and thought he could induce her to assent to it; but, when he returned to the plantation, where he supposed the corn was, he found that it had all been carried away, and he therefore gave no more attention to the proposed settlement, or compromise. The plaintiff testified, as a witness for herself, that said Wright was not her agent in the matter, and had no authority to act for her; and that she never assented to the said arrangement, or ratified it. The defendant testified, in his own behalf, " that he shipped the cotton, after it was ginned and packed, amounting to nearly eight bales, to said Bell & Moore, commission-merchants, at Mobile, some time in the spring of 1868, by virtue of a compromise between said Bell & Moore and John V. Wright, who represented himself as acting as the agent of the plaintiff in this suit; that by said compromise it was agreed, that the cotton was to be shipped to them, the levy on the corn released, and the corn left where it was, for the plaintiff's benefit; that he was not himself present at said compromise, but learned its terms from said Wright, who represented himself as plaintiff's agent, and also from a letter of instructions from said Bell & Moore. The plaintiff objected to said Wright's declarations, as proof of agency; but the court overruled the objection, on the defendant's counsel stating that he would introduce other proof of agency, and show plaintiff's knowledge that said Wright was acting as her agent; to which ruling plaintiff duly excepted."

The bill of exceptions purports to set out all the evidence, and then adds: "This being all the evidence, the court charged the jury, among other things, that if they believed, from the evidence, that the defendant, in taking said corn and cotton, acted under and by virtue of said writ of attachment, and the order indorsed thereon by W. C. Oliver, who was then the probate judge of said county, then, by virtue of said writ and order, he was not guilty of trespass, but was justified by the process under which he acted; that if he abused the process under which he acted, and suffered the cotton and corn to be wasted and destroyed by his neglect, then he was responsible in damages to the plaintiff, to the extent of the loss which she had sustained by reason of such neglect. Also, that if they believed, from the evidence, that said Bell & Moore, the plaintiffs in the attachment suit, made

a compromise with John V. Wright, and that he had authority to act as plaintiff's agent, then the plaintiff would be bound by the said compromise; and if the compromise was, that the cotton should be turned over to said Bell & Moore, in satisfaction of the debt in the attachment suit, and it was so turned over to them, and that the corn was to be restored to the plaintiff, or left where it was at the time of making said compromise, for her benefit, and said compromise was carried out in good faith by said Bell & Moore, then the defendant would not be liable in this action." To this charge the plaintiff excepted.

The rulings of the court on the pleadings and evidence, as above stated, and the charge to the jury, are now assigned as error.

Coleman, Clark & McQueen, for appellant.—1. The demurrer to the second plea (the first special plea) was well taken, and ought to have been sustained. The appointment as special coroner was void on its face, and gave the defendant no authority to execute the attachment, which was directed "to any sheriff."—*Gresham v. Leverett*, 10 Ala. 384; *Governor v. Lindsay*, 14 Ala. 658; *Pope v. Stout*, 1 Stew. 375.

2. The demurrer to the third plea, or second special plea, ought to have been sustained. The facts stated in said plea do not show a justification of the trespass.—*Hamner v. Wilsey*, 17 Wendell, 91; *Otis v. Jones*, 21 Wendell, 394; 2 Greenl. Ev. §§ 597, 629, 635, and note.

3. The court erred in allowing the writ of attachment to be read in evidence. This ruling, in effect, allowed the defendant all the benefit of the writ as a defense, as if it had been duly and legally returned.—*Kirksey v. Dubose*, 19 Ala. 43; *Young v. Davis*, 30 Ala. 218; 2 Greenl. Ev. §§ 597, 629.

4. The declarations of Wright ought not to have been admitted as proof of his agency, as shown in the bill of exceptions.—*Strawbridge v. Spann*, 8 Ala. 824; *Bingham v. Peters*, 1 Gray, 145; *Mussey v. Bucher*, 3 Cush. Mass. 517; 2 Greenl. Ev. §§ 60, 63, 114.

5. The court erred, also, in the instructions given to the jury.—Authorities first above cited; also, *Hartshorn v. Williams*, 31 Ala. 155; *Ross v. Philrick*, 39 Maine, 29; 2 Greenl. Ev. §§ 579, 635; *Griel v. Hunter*, 40 Ala. 542.

E. Morgan, contra.—1. Under the act of 1839, "any process," when required to be executed by the coroner, was also required to be directed to him (Clay's Digest, 336, § 133); and the cases in 10th and 14th Ala., cited for appellant, were decided under this statute. The Code of 1852 (§§ 2844, 2570),

[Womack v. Bird.]

and subsequent statutes, continue this provision only as to writs of execution and summons, thereby excluding other process. Besides, if the writ was misdirected, the defect was only matter of abatement.—3 Ala. 728; 1 Ala. 590; 8 Porter, 55; 60 Ala. 416.

2. The mere failure to return the attachment, according to its mandate, did not deprive the defendant of the protection afforded by the writ. Mere non-feasance does not convert a lawful act into a trespass *ab initio.*—40 Ala. 545. When the compromise was made, and fully carried into effect, the defendant might well suppose that the writ had spent its force, and that his duties in connection with it were ended. He filed the writ, after this suit was brought, for his own protection, as he might lawfully do.—4 N. H. 532. The court might hear and allow his excuse for not making due return of the writ.—2 Porter, 229; 2 McMull. S. C. 1. To make an officer a trespasser *ab initio,* he must abuse the same authority under which he originally acted.—15 Vermont, 509.

3. The attachment was regular, and the property seized was subject to it. The compromise was made in good faith, and was fully carried into effect on the part of the plaintiffs in attachment. The jury, by their verdict, found that Wright was the plaintiff's agent in making it, or that she ratified it; and she has certainly got the benefit of it. On these facts, she has suffered no injury by any erroneous ruling, and the verdict of the jury ought not to be disturbed.

STONE, J.—When this case was formerly in this court (51 Ala. 504), it was rightly settled that, under the plea of not guilty of a trespass *de bonis asportatis,* the defendant can not be allowed to prove, in mitigation of damages, or for any other purpose, that the act complained of was done under legal process. As the record then stood, it presented only the single plea of not guilty. When the case returned to the court below, a second plea was interposed, justifying the seizure of the goods under an attachment for debt, which, the plea averred, was returned to the court from which it issued, according to the mandate thereof. When the case was on trial, and the attachment was offered in evidence under the plea of justification, it was shown and admitted, that the attachment was not in fact returned, until some sixteen months after its issue, before which time this suit had been commenced. The authorities are unbroken that, to maintain the defense of seizure under mesne process, the officer invoking it must have duly returned the process, within the time prescribed by law, or must show a sufficient excuse for not doing so. In *McAden v. Gibson,* 5 Ala. 341, this court

said : "It is insisted that the second and third pleas are bad, because they do not allege that the attachments, under which the defendant justifies the detention of the slaves in question, were returnable, or in fact returned to any court. It has been held, in many English cases, that an officer can not justify under mesne process, after the day appointed for the return, without showing that it was returned, although with respect to writs of execution the law is otherwise. ... The cases cited show the rule, as stated, to be too firmly settled to authorize us to refuse its recognition. When restricted in its application to the officer charged with the return of the process, it can be productive of no injury or inconvenience. But, even in such cases, we will not say that it would not be allowable for the officer to excuse the return of a writ, by alleging its loss, or something, the effect of which would be to prevent its return, without the fault of the party charged with that duty." In *Kirksey v. Dubose*, 19 Ala. 43, it was said : "It is well settled, that if a sheriff justifies under mesne process, after the time appointed for its return, he must either aver its return, or show some legal excuse why it was not returned."—See, also, *Young v. Davis*, 30 Ala. 213 ; *Rowland v. Veale*, 1 Cowp. 18 ; *Clark v. Foxcroft*, 6 Greenl. 296 ; *Russ v. Butterfield*, 6 Cush. 243 ; *Williams v. Babbitt*, 14 Gray, 141 ; 2 Greenl. Ev. § 597.

The attachment was levied on cotton and corn ; and the defendant introduced testimony tending to show that, after the levy, and before the return day of the attachment, the plaintiffs in attachment and the agent of the defendant (plaintiff in this suit) agreed on terms of compromise ; by which it was agreed, that the corn was to be released from the levy, and left where it was seized, for the benefit of defendant, and the cotton was to be delivered to the plaintiffs in attachment. Nothing was said as to what was to become of the attachment suit. There was testimony, denying the making of such agreement of compromise, and disputing the agency under which it was claimed to have been made. The officer, Bird, delivered the cotton to plaintiffs in attachment. The proof tends to show that some of the corn had been removed, and disposed of by the officer, before this agreement was made. It is not shown what became of the residue of the corn. These facts are relied on, as an excuse for not returning the attachment, and as an equivalent of the averment in the plea that the attachment was duly returned. We do not think this a sufficient excuse for not returning the attachment ; and hence we hold, that the Circuit Court erred in allowing the attachment and levy to go in evidence to the jury.

The questions raised on the appointment of the special

[Womack v. Bird.]

coroner, and on the direction of the attachment, are rendered immaterial by this ruling. We may add, however, that we are not convinced there is any thing in those objections, under the statutes of force when the attachment was issued and levied, and still unchanged. But we need not, and do not, decide these questions.

The third plea does not set out, or state, the contents of the attachment, under which the levy was made, nor does it set forth the authority under which the special coroner acted. Hence, it is not a plea of justification under process. There is nothing in this plea, which shows the attachment was issued by an officer authorized to issue it, or that it was so framed as to authorize such levy, or that Bird, who levied it, had any authority therefor. Its sufficiency, as a defense, rests on the alleged compromise, the terms of which are stated above. Its language is, "by which compromise and settlement, the cotton levied on was agreed to be, and was turned over to said Bell & Moore" [plaintiffs in attachment!, "to be by them sold, and applied towards the payment of the debt of said Ann M. Womack to said Bell & Moore, sued for in said attachment suit; which was accordingly done, and the said Ann M. Womack duly credited by said Bell & Moore with the net proceeds of said cotton; and that by said compromise and settlement, the levy on the corn was to be released, and said corn left where it was when said levy was made; and said levy on said corn was released accordingly, and the corn left where it was when levied on under said attachment." It is not averred that Mrs. Womack agreed, as one of the terms of the compromise, to surrender or abandon any claim she may have had for damages, for the trespass and seizure of her goods; but the plea seeks to give this effect to the compromise, beyond the letter of the alleged agreement. This is extending the effect of the compromise too far. One whose property has been tortiously taken, may receive it back, in whole, or in part, or may consent to have it turned over to another, without impairing his right, thereby, to sue for the trespass. Restoration of the goods does not heal the wrong done by the trespass.—*Ewing v. Blount,* 20 Ala. 694. Such restoration of possession to the owner, or resumption by him, is a proper inquiry in mitigation of damages. It is no bar to the action. The demurrer to the third plea should have been sustained.—2 Greenl. Ev. § 635 *a.* As mitigation, testimony of the delivery of the chattels to Mrs. Womack, or to another with her authority, or that of her authorized agent, was allowable under the general issue.

Agency can not be established by the mere declarations of the one assuming to be agent. It may be implied from his

[Glover v. McGilvray.]

previous employment in similar acts, or from subsequent acquiescence.—*Fisher v. Campbell*, 9 Por. 210.    It is, like any other disputable fact, always a question for the jury, when it is sought to be established by parol proof.—1 Brick. Dig. 55, § 281.

Reversed and remanded.    This judgment to take effect as of February 13, 1877, when this cause was submitted.