# Hearn *v.* Louisville & Nashville R. R Co.

## *Loss of Freight.*

(Decided November 19, 1912.   60 South. 600.)

1. *Principal and Agent; Existence of Agency; Shipper's Agent.*— Where a shipper told a railroad agent that certain persons were his agents to receive and remove the goods, and that on arrival of the goods the railroad agent might notify a third person who would notify the shipper's agents, such third person was the shipper's agent to receive the notice, notwithstanding the fact that the railroad agent undertook to notify the shipper's agents who were to remove the goods, but did not do so.

2. *Carriers; Liability; Warehousemen.*—Under section 5604, Code 1907, the carrier, after the time for removal held the goods as warehousemen, where within twenty-four hours after the arrival of the goods, it notified the shipper's agent of the arrival of the goods, and was not liable for their loss by fire.

3. *Appeal and Error; Review; Special Finding.*—Where a case is tried by the court without a jury and a special finding of the facts is requested and had, an appeal from the judgment rendered does not bring up the finding for review, the appellant court only examining the finding to see if the facts as found support the judgment rendered.

APPEAL from Etowah Circuit Court.

Heard before Hon. J. E. BLACKWOOD.

Action by L. L. Hearn against the Louisville & Nashville Railroad Company, for damages for the loss of goods. Judgment for defendant, and plaintiff appeals. Affirmed.

McCORD, ROPER, INZER & STEPHENS, for appellant. There was no delegation of power to Rhodes by appellant, and no assumption of power by Rhodes, and hence, no agency.—1 A. & E. Enc. of Law, 937; 31 Cyc. 1189.

Under the facts in this case there was no notice of the arrival of the goods within twenty-four hours after their arrival, and hence, nothing to change the liability from that of carrier to that of warehousemen.—Sec. 6137, Code 1907.

DORTCH, MARTIN & ALLEN, for appellee. Under the facts in this case Rhodes was the agent to receive notice, and the fact that the agent of the railroad proffered to notify the shipper's agent was not a matter which concerned the Railroad Company, and could not possibly place upon it a duty which it had already discharged.—*Cox & Co. v. R. R. Co.,* 91 Ala. 392; *Bir. R. R. Co. v. Seaborn,* 162 Ala. 658. Under the facts then, the relation of the parties was that of warehousemen, and hence, common law liability and that is determined by notice.—74 Ala. 430.

PER CURIAM.—This suit was brought by the appellant against the appellee to recover the damages which the appellant claims he sustained because of the failure of the appellee to deliver to him at Altoona, Ala., certain freight. The freight was received by the appellee as a common carrier and was, by appellee as such common carrier, for a reward, to be transported to Altoona and there delivered to the appellant. The freight reached Altoona on one of appellant's trains on October 26, 1910, and was on that day placed by it in its depot warehouse at that point It remained in the depot warehouse until 2 o'clock on the morning of November 2, 1910, when said warehouse and the freight, the subject of this litigation, were destroyed by fire. The only question is: Was the appellee, at the time of said fire, still liable to appellant as a common carrier, or was it only liable to him as a warehouseman?

1. If, at the time the freight was destroyed by fire, the appellee then held said freight as a common carrier, the appellant was entitled to recover. If, on the other hand, the appellee then occupied only the position of a warehouseman as to such freight, the appellee was entitled to recover. The case was tried by a judge without the intervention of a jury, there was a special finding of the facts by the trial judge, and a judgment for the appellee, and the plaintiff in the court below appeals.

2. It appears from the evidence that appellant, at the time of the loss complained of, was moving with his family to Altoona, and that the freight referred to consisted of his household effects. On or about the 24th of October, the appellant was in Altoona. The freight was then on its way to Altoona, but had not reached there. As the appellant desired to spend a few days in Birmingham and to leave Altoona on the above day, he made arrangements with B. H. Ellison and John Reese to receive said freight upon its arrival at Altoona and to remove it to the house which appellant intended to occupy as a home in Altoona. Reese lived about two miles from Altoona, and Ellison lived about three-quarters of a mile from the appellee's depot and freight warehouse at that point. The appellant had a brother-in-law, Rhodes, who resided in Altoona, and this brother-in-law met four of appellee's passenger trains each day at its depot in Altoona. Before leaving Altoona, the appellant saw appellee's agent at Altoona, told him that he was leaving for Birmingham; that the freight would probably reach Altoona before his return; that Ellison and Reese were his agents to receive and remove the freight; and that, if the freight came before appellant's return, the agent might notify Rhodes of its arrival, and that Rhodes would notify Ellison. The

freight came during appellant's absence; the agent saw Rhodes, and notified him of its arrival. According to the special finding of the facts by the trial judge, when this occurred the agent asked Rhodes if he was to remove the freight, to which Rhodes replied that "B. H. Ellison was to remove them, and he would notify Ellison, to which the agent replied, 'He has a phone, and I will call him up.'" The agent's testimony tended to show that he called for Ellison, but did not reach him over the telephone, and all the evidence shows that neither Rhodes nor the agent ever said anything to Ellison about the freight. On November 1, 1910, the appellant returned to Altoona from Birmingham, and, finding his freight still in the depot, undertook to remove it. He was unable to do so, however, and that night it was destroyed by fire.

3. Section 5604 of the Code of 1907 makes it the duty of a common carrier of freight, within 24 hours after the arrival of freight at its destination, to give notice by mail or otherwise to the consignee of the arrival of such freight. The consignee is, by the terms of section 5613 of the Code of 1907, given "forty-eight hours, computing from seven o'clock a. m. of the day following legal notice of arrival," within which to remove such freight. After that time, if the freight has not been removed, the relations between the common carrier and the consignee become by virtue of said statute, those which a warehouseman owes to its customers, and only those. Of course as the appellant—the consignee of the freight referred to—was out of Altoona when the freight arrived, if the agent of appellee gave the notice to that party to whom the appellant directed it to be given when the freight arrived, then the agent performed his duty under the statute above referred to, and the time within which the freight under the above

statutes should have been removd began to run.  Un-
doubtedly if the agent had given notice to Ellison and
Reese, instead of to Rhodes, the law would have been
complied with.  The appellant told appellee's agent
that he might discharge that duty by giving notice to
Rhodes.  While the agent, when he performed that du-
ty, told Rhodes that he would call Ellison up over the
telephone, his failure to do so did not, in any sense, de-
stroy the agency of Rhodes to receive the notice, and
we cannot hold that the special finding of the facts by
the trial judge did not authorize the trial judge to con-
clude as a part of such special finding, to use his lan-
guage, that "Rhodes was the agent of plaintiff to re-
ceive notice of the arrival of the goods, which notice was
given within 24 hours of the arrival of the goods, and
in giving the notice the defendant discharged its duty
to the plaintiff in that respect."  While the trial judge,
in the special finding of facts, states that the appellee,
after the expiration of 48 hours after such notice to
Rhodes, held the goods as a warehouseman for hire,
when, under the law, appellee did not become a ware-
houseman until the expiration of 48 hours after 7
o'clock of the morning succeeding the notice to Rhodes,
that error amounts to nothing.  The goods were in the
depot, as shown by the special finding of facts, more
than 48 hours after 7 a. m. of the day succeeding the
day on which Rhodes received the notice, and, under
the special finding of the facts, the appellee was a ware-
houseman, under the law, for hire of such goods at the
time they were destroyed by fire, and we cannot hold
that the special finding of the facts does not support
the judgment which was rendered by the trial court.

"Where a case is tried by the court without a jury,
and a special finding of the facts is requested and had,
on appeal from the judgment thus rendered the appel-

late court cannot review the facts as found, but will only examine it to see if the facts as found will support the judgment rendered."—*Kitchen Bros. v. Robinson Bros.*, 138 Ala. 419, 35 South. 461; 5 Mayfield's Dig. p. 44, §§ 271, 272, and authorities cited.

The judgment of the court below is affirmed.

Affirmed.

NOTE.—The foregoing opinion was prepared by Judge DE GRAFFENRIED, while he was a judge of this court, and is adopted by the court.