(100 South. 72)

DOLCITO QUARRY CO. et al. v. CRUSE-CRAWFORD MFG. CO.  (6 Div. 317.)

(Court of Appeals of Alabama. April 22, 1924.)

**1. Appeal and error ⬳1008(1)—Effect of findings by court.**

Where court has tried case without jury, and has made special finding on facts, the only office of a bill of exceptions is to present for review rulings of the court and erroneous admission or exclusion of evidence which might have influenced court in making special finding, and in rendering a judgment it might not otherwise have rendered, thereby raising presumption of injury.

**2. Appeal and error ⬳1008(1)—Appellate court will ascertain whether findings sustain judgment but not whether findings are sustained by extrinsic evidence.**

Under Code 1907, § 5361, the appellate court will review trial court's special finding of facts to ascertain whether the finding sustains the judgment, but will not pass on correctness of special finding under extrinsic evidence.

**3. Railroads ⬳260—Company liable for negligence of another permitted to use tracks.**

Generally a railroad company permitting another to use its tracks is liable for damage caused by the other's negligence.

**4. Railroads ⬳260—Company held liable for negligence of employee of quarry company permitted to use tracks.**

Where railroad company permitted stone quarry company to use tracks under arrangement whereby railroad moved empty cars up incline to quarry, where cars were loaded and let down track by quarry employees, the railroad company was liable for damage to truck in collision with car descending incline due to quarry employee's negligence.

**5. Appeal and error ⬳1078(1)—Assignments waived if not insisted on in brief.**

Assignments were waived by failure to insist upon them in brief.

**6. Railroads ⬳272—Finding use of car by quarry company was by permission of railroad held warranted.**

In action against railroad company for damage to truck struck by car because of negligence of quarry company's employee, evidence *held* to warrant finding that quarry company's use of car and track was by agreement or permission of railroad.

**7. Railroads ⬳346(4)—Burden on company to acquit itself of negligence.**

In action for damages to truck struck at crossing by car descending incline by gravity, in which there was evidence that defendant railroad company had complied with requirements of Code 1907, § 5475, as to making crossings safe, defendant, under section 5476, had the burden of acquitting itself of negligence.

⬳For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

[1] Ante, p. 82.       [2] Ante, p. 72.

**8. Railroads ⊗⇒348(1)—Finding of negligence in operating car by gravity warranted.**

Evidence *held* to sustain finding that collision at crossing between truck and car running down incline by gravity was due to negligence of employee operating car, in not using appliances at hand to stop car on discovery of peril.

Appeal from Circuit Court, Jefferson County; Romaine Boyd, Judge.

Action for damages by the Cruse-Crawford Manufacturing Company against the Dolcito Quarry Company and the Louisville & Nashville Railroad Company, for the negligent collision of a freight car with an automobile truck. Judgment for plaintiff, and defendants appeal. Affirmed.

The special finding of facts by the trial judge is as follows:

Plaintiff, Cruse-Crawford Manufacturing Company, a corporation, was engaged in 1921 in the sale and repairing of automobiles and automobile trucks in the city of Birmingham. Among its customers in Birmingham was the Barclift & Norris Grain Company, a corporation, and about November 10, 1921, said grain company sent one of its auto trucks to plaintiff for repair, and plaintiff lent said grain company a one-ton auto truck, the property of plaintiff, to be used by said grain company in delivering grain and other merchandise to its customers in the regular course of its business. On November 14, 1921, Isaiah Morris, an employee and driver of said grain company, while acting in the line and course of his said employment, had delivered some grain and other merchandise to a customer of said company at Ketona, about seven miles from Birmingham, and, while returning to Birmingham, said truck, while passing over a railroad crossing at Dolcito, on the Pinson road, which was a paved public highway about 12 feet wide, was run into by a gondola or freight car, which was being operated by a 20-year old negro employee of defendant, Dolcito Quarry Company, named Charlie Hamlet, in the line and course of his employment by said quarry company.

Said defendant quarry company operated a dolomite, or stone quarry at Dolcito, about five miles from Birmingham, on said November 14, 1921 and for several years prior thereto. Said quarry was located about 100 yards south of said Pinson public road, which road was a paved public road and was traveled by the public with great frequency at all hours during the day.

The railroad tracks of the defendant, Louisville & Nashville Railroad Company, a corporation and common carrier, were extended from a point on the north side of said road at Dolcito across said Pinson public road to defendant quarry company's quarry. By arrangement and custom between defendants, the defendant railroad company would push or move by engines the empty cars to said quarry and defendant quarry company would load defendant railroad company's cars with dolomite or stone at the quarry, and the cars would then be let down the track by said quarry's

employees by gravity on a slight incline across the public road to the said railroad's main line, where the cars would be picked up by defendant railroad and transported to place of destination. In letting the loaded cars down, the movement and speed of the cars being controlled by handbrakes, said arrangement and conditions existed at the time of said accident. and the use of said cars and tracks was with defendant's railroad's permission, allowance, consent. and agreement, and the said Hamlet was operating said car. as aforesaid between said points and under said circumstances and conditions and arrangement at time of said collision.

At the time of the accident said driver of the auto truck was approaching said crossing, going west, about the middle of the road, at 15 to 20 miles per hour, and he was looking to the north side of the public road with his head turned in that direction, from the time he reached the defendant quarry company's commissary until he was in about 10 feet of the crossing, when he first discovered or became aware of the approaching freight car, and he then turned the truck slightly to the right edge of the road to avoid the collision, which occurred in said public road at a point about 4 feet from the north side or edge of the public road.

The commissary was a building about 40 by 60 feet, located on the south side, and about 15 feet from the public road and about 80 feet from the crossing. At a point on said railroad 20 feet from the southside of the public highway the view of the public highway was unobstructed for a distance of about 125 feet. Said Charlie Hamlet was on the north end of the freight car at the hand brakes, which was the only means provided for stopping or checking the speed of the car. When said freight car reached a point about 20 feet from the public road said Hamlet saw driver of said truck approaching the railroad track about 75 feet from the crossing looking to his right and to the north side of the public road, and said Hamlet, realizing that said driver of said truck was unaware of the presence or approach of said freight car and being aware of said driver's peril, hallooed at him and then waved one hand at him and began to tighten and apply the brakes with his other hand only and brought said freight car to a stop, after it had run, into said auto truck, at a point about 3 to 8 feet north of the north side of the road, or about 35 to 40 feet from where he first saw, and became aware of said driver's peril and the probability of a collision. It was reasonably practicable for him to have stopped the freight car in a distance of 15 feet. No watchman or flagman was maintained at said crossing nor was there any railroad crossing sign board or signal there. Said auto truck driver knew of the existence of said railroad crossing at Dolcito. There was no wanton, willful, or intentional misconduct on the part of either the defendant or its servant or agent.

Defendant Dolcito Quarry Company's said servant or employee, Charlie Hamlet, while engaged in the line and scope of his employment was negligent in not stopping said freight car before the collision after becom-

ing aware of said truck driver's peril and of the probability of a collision and consequent damage to said truck and this negligence proximately caused the accident and damage to plaintiff's truck, the reasonable market value of which immediately before the said collision was $850, and $100 immediately afterwards, or a diminished value of $750.

Said auto truck at the time of said accident was in the exclusive possession and control of said grain company as a bailee, and plaintiff had no direction or control of the use of same at said time, and said grain company was not an agent, servant, or employee of plaintiff.

Tillman, Bradley & Baldwin, of Birmingham, for appellants.

A railroad is not liable for the acts of the servants and agents of another in moving cars over or along a spur track without its authorization or knowledge. Cleveland, C., C. & I. Ry. Co. v. Wynant, 114 Ind. 525, 17 N. E. 118, 5 Am. St. Rep. 644. When the operator of a train, who was keeping a diligent lookout ahead, does everything within his power to avoid the accident from the time that the danger is apparent, he is not guilty of negligence. Gaynor v. L. & N. R. R. Co., 136 Ala. 244, 33 South. 808; Sands v. L. & N. R. R. Co., 156 Ala. 323, 47 South. 323.

Engel & Mudd, of Birmingham, for appellee.

Where a railroad company permits another to use its tracks, etc., it is liable for damages caused by the negligence of such other. Ga. Pac. v. Underwood, 90 Ala. 49, 8 South. 116, 24 Am. St. Rep. 756; N. A. Ry. Co. v. Guttery, 189 Ala. 604, 66 South. 580; St. L., M. & S. v. Chappell, 83 Ark. 94, 102 S. W. 893, 10 L. R. A. (N. S.) 1175; 1 Elliott on R. R. (3d Ed.) 540; Penn. v. Ellett, 132 Ill. 654, 24 N. E. 559.

SAMFORD, J. The trial in this case was by the court, sitting without a jury. A special finding on the facts was demanded and complied with by the court.

[1] In a case such as here presented the only office of a bill of exceptions is to reserve and present for review rulings of the court and the admission and exclusion of evidence such as by its erroneous admission or exclusion might have influenced the mind of the court in making a special finding and rendering a judgment it might not otherwise have rendered, thereby raising a presumption of injury to the party excepting. First Nat. Bank, etc., v. Chaffin, 118 Ala. 246, 24 South. 80; Chandler & Jones v. Crossland, 126 Ala. 176, 28 South. 420.

[2] It is provided by section 5361 of the Code of 1907, that "the finding of the court on the facts shall be subject to review without an exception thereto"—that is, to the extent of ascertaining whether the finding of the facts by the trial court sustains the judgment rendered. Kitchen & Bro. v. Rob-

inson Bros., 138 Ala. 419, 35 South. 461; Chandler v. Crossland, 126 Ala, 176, 28 South. 420; American Ex. Co. v. Barnes, 18 Ala. App. 295, 91 South. 912; Am. C. I. P. Co. v. Birmingham Tailoring Co., 16 Ala. App. 583, 80 South. 157.

[3, 4] If the special finding of the facts is correct and this court is without authority to review this question, upon the evidence extrinsic of those findings (Kitchen & Bro. v. Robinson Bros., supra), the judgment rendered by the court as to both defendants is sustained. The general rule is that where a railroad company permits another the use of its tracks, it is liable for damages caused by the negligence of the person or company so using and enjoying the permissive use. 22 R. C. L. p. 1096; Ga. P. Ry. Co. v. Underwood, 90 Ala. 49, 8 South. 116, 24 Am. St. Rep. 756; Ricketts v. Birmingham St. Ry. Co., 85 Ala. 600, 5 South. 353; vol. 1, Elliott on Railroads, p. 541. The case of Cleveland, C., C. & I. Ry. Co. v. Wynant, 114 Ind. 525, 17 N. E. 118, 5 Am. St. Rep. 644, cited by appellants, has no application in this case. The foregoing disposes of assignments 2, 3, 5, 6, 7, 8, 9, and 15.

[5, 6] This leaves for consideration only the fourth assignment, all others having been waived by failure to insist upon them in brief. This question turns upon (1) whether there is any evidence to support the legal inference that the use of the Louisville & Nashville car and track by the quarry company at the time of the accident was by agreement or permission of the defendant the Louisville & Nashville Railroad Company; or (2) Was there any evidence tending to prove negligence on the part of Hamlet, the person who was operating the car?

As to the first question: There was evidence that this spur track was connected with the main line of the Louisville & Nashville Railroad Company; that its engines operated over it in pushing cars up to the quarry; that the cars so loaded were "let down" that is, permitted to run down grade by gravity, and turned over to the Louisville & Nashville Railroad for transportation; that the "letting down" was done by the employees of the defendant quarry company and the "pushing up" of the empties was done by engines bearing the initial and numbers of the Louisville & Nashville Railroad Company; that this was a continuing practice over this spur and was done openly. From these facts it would not require a very astute mind to arrive at the conclusion reached by the court in his findings.

[7, 8] As to the second question: The evidence to sustain the court's finding is even more potent. There was evidence tending to prove a compliance by the defendants with the requirements of section 5475 of the Code of 1907, and injury to plaintiffs' property having occurred at said crossing caused by

.one of defendant's cars, under section 5476, Code 1907, the burden was cast upon defendant to acquit itself of negligence. There was no evidence that the car was properly equipped with the latest appliances for stopping the car, there was evidence tending to show that defendant's employee saw the peril of the truck and observed the fact that the driver of the truck did not realize the peril, and that after this he might have stopped the car and prevented the accident, if he had even used promptly the appliances at hand. We find no error in the record, and the judgment is affirmed.

Affirmed.